May it please the Court. My name is Hertha Lund. I'm an attorney from Bozeman, Montana. I grew up on several ranches in Montana. And I actually, we ranched on a different reservation, so I certainly understand what it's like to be on the reservation and the arid nature of these and how important water is. I also clerked for the Chief Judge of the United States Court of Federal Claims 22 years ago, so I understand the claims court in that jurisdiction. So just in case that's a question, because that was brought up by the United States in their briefs, I understand that court. Also today I have my clients with me, Kathleen Flatmouth, Claudia Flatmouth, Rebecca Flatmouth, and three of my other clients are on their way and must have gotten caught in traffic. So they traveled all the way from the Crow Reservation today because this is so concerning to them that they may lose the rights that came with their allotment way back to 1851 and when their ancestors got the allotments from the federal government. So in some ways this is a very complicated case. It spans more than 150 years. It goes back to the 1851, the Fort Laramie Treaty. And also we know that in 1908 the United States Supreme Court declared in the Winters case that at the time the reservations were set aside that they got a reserved water right, even though the specific treaty did not talk about that water right. So this case involves property rights, due process. As you know, my allottees have constitutional rights. They have statutory rights. The United States has a special duty to them. So this case involves Indian law, trust duties. It involves the Administrative Procedure Act, the federal government and whether or not there's a waiver of sovereign immunity, multiple jurisdictions, the state Montana Water Court, the Montana Supreme Court. So you're kind of like coming in at the last page of Gone with the Wind. So it seems complicated. It spans more than 37 years from when Montana first started doing the compacts. However, one truth remains. This court is all that stands between my clients and a travesty of justice. I will be saving five minutes for rebuttal. Counsel, let me ask you, given that description you've given, what do you believe that this court can do for your clients at this point, given all that's occurred? The compact, the court, all that's occurred. I mean, it's been going on for a long, long, long, long time. But here we are. The compact is complete. Your clients certainly have the winter's rights claimed for what they are worth at this point. Is your claim for the difference between the value of what you now have and what you would have had if you had full winter rights? Or are you saying that we can somehow undo the compact? And if so, on what basis? I think I am not here for my clients do not want compensation for their water rights. And that's why I started out letting you know I understand the claims court. Even before you go past that to answer Judge Smith's question, when you say they don't want compensation for their water rights, your complaint, I believe, certainly your pleadings make clear, you're not looking to have water rights quantified, right? Correct. But Judge Smith is asking a little bit different question, which is do you contend that the rights your clients will have under this new system are diminished from what they would have had under winters? Oh, absolutely. They're not only diminished, they're nonexistent. How do we know that? It's based on the case law, and that's also why you have to remand it back to the district court. What case law? My understanding of this was that the tribal water code then would have a process for deciding what the rights are. If your client's rights haven't been decided yet by the tribe, then how do we know what they're claiming? Well, let's start out with the first premise that in the West and in Montana, water right is a real property interest. I'm from Nevada. I'm quite familiar with it. So right now with the compact, my clients do not have a property right. They have a right to potentially some future process that may or may not give them water. What did they lose that they had before? They had a right to a certain amount of water at a certain place at a certain time. That was their property interest. Pursuant to the compact and what's happened, did you realize that the Crow tribe only owns 20% of the 8 million acres, and yet they got 100% of the water? In Montana, a water right is supposed to be a pertinent to the property. It's not supposed to be separated. This compact took the water away from the allottees and gave it to the Crow tribe who only has 20% of the property. My clients own 40% of the water. But isn't the Crow tribe under the same obligation that the United States would be under? That is to allocate the water equitably? Yeah, but an equitable appropriation, that's like telling my husband who owns property in Marr County that Marr County can equitably distribute his property between all the county residents. This is a water right, and before the allotment, before the compact, they had a right to use that water on their property. Do you realize that? Ma'am, this is really important to your clients and to us, and I don't understand what you're saying. Okay. So can you back up? Yes. There was a bundle of rights pursuant to Winters. I think we all understand what those were. And here's my problem. There's a new structure, a new apparatus in place pursuant to this compact. Okay. I'm going back up to the 30,000-foot level because that's what I need help with. Yes. And when I read the compact, it reads to me like a list of bullet points acknowledging the Winters rights. And then there's this water court and a system for allocating them equitably. Can you tell me? My first question before we talk about the apparatus is just, you think your clients have a lesser, that their property interests were taken away by the Settlement Act but replaced with something somehow diminished. Is that right? I think they were replaced with no right. They got their promise some future process to something we don't know. A property right is not a process. It is a right to something that is quantifiable, which they had. The property rights have been confused for a long time. These are very complex. It's clear that there are competing and contradictory property rights. So your clients may have a right, and they may have used a certain amount of water in the past. But there may be somebody else upstream, downstream, who has a competing claim to that. Part of the reason for this whole settlement was we didn't have a good way of figuring all of those things out. So the U.S., Montana, the tribe got together and said, we're going to try and figure this out once and for all. And you're correct. And you should know that we did many other compacts in Montana, and no other compact treated the allottees. Why is your claim even ripe, since you don't know what's going to happen when the tribal water code is implemented? We know that they don't have a property right anymore. How do we know that? Because instead of having a quantifiable water right, they now are promised some process in the future. I think this would help you. Before the compact and the Settlement Act, if the allottees sold their property to a non-Indian or another Indian, their water rights went with it. Now what happens? Now it becomes part of some process in the future that we don't know what it's going to be by the code tribe. And at the end of the process, which we don't going to judge Bybee's point about ripeness, at the end of the process, there's an allocation of water per allottee, right? That's how it's designed? No, we don't know that. So if that's true, if the problem is you don't know what's going to happen at the end of the process, then could you please speak to Judge Bybee's point, which is why is the claim right? The claim is right because, again, I think what we're getting mixed up in, and this is what I've spent 22 years practicing on and it's very complicated, but water rights are very similar to real estate. Real estate, we can go out and look at it. We can see mates and bounds and we can quantify it that way. A water right in the West is quantified by a certain amount in a certain place, but it doesn't mean it's any more diminished as an identifiable water right. I don't hear anybody on the bench pushing back on that. We recognize this is a really important property right, but we're trying to figure out what it is that you mean when you say you think the winter's rights have been replaced with nothing. And after the compact, they no longer have that. So let's go back to my comparison to a non-Indian allottee who's stepped into the shoes of an allottee. Today, they are going through the adjudication system of the Montana Water Court and they are getting a quantifiable water right on their property based on the land that they got from the allottee. So they now have quantifiable water rights that nobody else can say is part of some pool that can be measured each year. They have a certain amount that they can rely on, that they can use on their property, and they got their rights from the allottees prior to the Settlement Act. So now, going forward, the allottees do not no longer have what they used to be able to convey to someone else. They do not have a freely transferable property right that has been diminished, taken away, evaporated in this process. I'm still very confused. Let me just put a number on it just for my sake, okay? So let's suppose that one of your allottees claimed 100 cubic feet of water. Okay, I have no idea whether it's a large amount or a small amount. We're just going to put a number on it. And in the past, they've been using 100 cubic feet of water. Can't they go to the tribe today and say, I'm entitled to 100 cubic feet. This is what I've always had. This goes back to 1851 to the Laramie Treaty. And that's what I want. No, and going forward, according to the compact, the tribe could say, you know, look, we have all these other people that have it. A tribe can say, but the tribe hasn't said. That's my question about ripeness. How do you know you've lost something off of your 100 acre feet? Or the 100 cubic feet. If the tribe comes back and says you get 75, then I understand you now have a palpable loss of 25, a claimed loss of 25. But you don't know that until the tribe actually does that. So the whole thing strikes me as not ripe at this point. Well, we know that we don't have a right. Because prior to this, it's like, again, let's go back to real property. Let's say my husband owns 100 acres. And under this, to analogize to this, we'd say, okay, the county took over all this property. And in the future, he says, I want to farm my 100 acres. And they say, well, maybe, maybe not. You know, it's now owned by all of the county. You can use 80. Before that, we had a property right to use 100 acres. It was clear and defined. Water breaks down just a little bit. Because at least with the property, you have a meets and bounds description. The water, you've got ebbs and flows depending on the year. But if you are a seniority, you have a right to use that. Right. But it gets very complicated. It does. But until the tribe actually makes a decision, you don't know whether you've actually lost anything. You suspect you're going to lose something, in part because there are so many claimants. But that's why this whole process was set up, was because there were conflicting and inconsistent claims on the water. The process, that's not quite accurate. The process was set up to quantify how much each individual water user had to put on their property. And this is the way the United States and the federal government and the Crow tribe decided. When your clients lose that, when they finally get an allotment, a water allotment through the process, and they think they've lost something, then why don't they bring a takings claim at that point? Because the takings, well, number one, they don't want a takings. In this area, if you don't have water for your property, your property is not worth anything. But if you've now got money, you now have the ability at least to go out and buy water from somebody else. There are no sales of water in Montana. That is not accurate. If you do not have water, your property is diminished greatly in value and possibly not usable, and you probably won't be able to lease it for farming or for stock water use. So it is a great hindrance in this area. But, counsel, to follow up on my colleague's question, as I read the compact, you're supposed to get an allotment from this court, the water court. Apparently it hasn't been quantified at this point. You're going to get an allotment by its expressed terms. We don't know how much. You don't know how much. This is not ripe. How are we supposed to adjudicate this? And let's just say hypothetically that we put that to the side. I go back to my original question. What authority does this court have to avoid a compact among a state, tribe, and the United States Congress? Where is our authority to do that? Your authority is to uphold the United States Constitution and due process to my client. But isn't this a political question? I'm not even sure it's justiciable. Because it really feels, when I read the briefing that you filed, and I've read it and reread it, tried to be really careful with it, that you're really objecting to an act of Congress. Well, even if that were so, Congress doesn't have a right pursuant to the Constitution and the case of the United States Supreme Court interpreting treaty laws to take away rights from my clients who have lost. So is your argument that Congress has overstepped because they passed a law, the Settlement Act, that you think is unconstitutional because it's a taking? Is that right? I think it's unconstitutional because of the due process rights. Again, my clients, if we go to a takings, then they lose their water right, which means forevermore their property is worthless. Do you realize that the Crow tribe is competing? Hold on, hold on. Forgive me for interrupting, but right there you're losing me. Because you said you think it's unconstitutional. I said because of a taking, and you said no, because of a due process right. Your complaint talks about you didn't basically let us come to the table and participate and you didn't get us a lawyer. Do you mean that? Is that your due process right? Are you talking about a taking of a, you know, replacing the Winters rights with a diminished property right? It is a taking of a property right, and I wouldn't even say there's a diminished property right. In the future, there is no property. What's your constitutional claim? My constitutional claim is based on Winters. My clients have a severable and powers in all the progeny of cases and interpret Winters that my clients have a right to water at the time, the priority date of when the reservation was set aside, and it's to them individually, not the tribe. And that right, that property right, they were not afforded any due process. In fact, the United States waived their rights against the United States, gave it up, and said that they could no longer, they couldn't sue them. May I interrupt you? Because I think you just hit on something that was another question I had. Is your complaint, and I don't mean that as a term of art, but is your argument that they had, your clients individually had Winters rights before the Sutherland Act, before the compact, and now what they have is a piece of, or that the aggregate property right has been given to the tribe? Absolutely. And you realize that the tribe prior to this, and this is in my complaint, they have only 20% of the land. So they are competing landowners on the reservation, and in fact they're actively trying to buy up the land. And so in this arrangement, they didn't get just the water right that goes with their land. That's a pertinent to it. They got my client's water rights. So technically, usually in Montana, the individual that owns the real property gets the water right that goes with it. And in this case, kind of in a, I think an unholy alliance, the Crow tribe ends up with all the water. My clients end up with some process, potential process in the future, to maybe get water. That's not a right. Okay. So I think we're making progress here, actually. So that's the taking. Well, thank you. I'm really trying to understand it. That's the taking, is that now you're concerned that it's not a matter of, you're not content to sit back and wait for the process to run its course and then determine whether or not you're getting a lesser allotment. Your concern is this act of Congress has moved the winter's rights that were individual to your clients to the tribe. Correct. They took it out of one bucket and put it in another bucket. Let me just ask you this. I practiced real estate law for 37 years and we did a lot of water law. I seem to be hearing you say that water is a physical asset that is so unique that the government can't take it lawfully under any circumstances, that the winter right is, in effect, an imperishable, unenviable right. No matter what anybody else claims, you've got that right. Say there were a huge national emergency and the government needed that water, they could not take it because it is a sacred water right. Is that your position? No, Your Honor. Obviously, if my clients could get past, you know, what they would prefer to have is their property, which they got when the reservation was set aside. Remember, before the treaty, they had all the land. I understand that. No, I think they could have a condemnation case, a taking case. Okay, so my point is simply this. My colleagues have talked about ripeness, et cetera, all of which I agree with. But I'm just struggling with it. You seem to keep coming back to the idea that somehow the water rights that they got from the winter case are inviolable. You cannot do anything with them, no matter whether they're conflicting claims or whatever else. If that's right, then you may have a point. I don't know of anything in the United States law that is inviolable. The government can condemn almost anything. You have to pay for it. But in this case, if, in fact, your position is correct that they have taken it, then you may have a right under the Fifth Amendment to be compensated for it. You say that's not adequate. Well, they set up a mechanism so that under this tribal court, you can get allocation of water rights. But as you pointed out to my colleagues and me, you don't know what you're going to get. You haven't gone far enough in the process. If it's 100 acre feet before, you may get 99. You don't know. If you get 99, then you're pretty close, and you maybe have a claim for the one acre foot. But you don't know at this point. My very first case for Judge Smith was about a repossessed cat house under RICO that had a mortgage on it, and Judge Smith did not find the takings, and he was sent back because, pursuant to the Constitution, the United States Appellate Circuit Court said that any right that was taken, even if it's de minimis, has to be paid for. Well, I don't question that, whether it's a cat house or water. But the reality is there is a takings clause. And you seem, I thought you were saying to my colleagues and to me, is you don't want a takings claim. You want that water, the water you've got under winters, nothing else, no diminishment of any kind. And I'm saying that's a very unique right that you say you cannot take this property. If you can, then where's your case? Because that's what, in effect, occurred here is through the compact. They've taken what was the original winter's right. You're entitled to certain rights. You have to be litigated to find out exactly what you're going to get. But until you know what you're going to get, you don't even know how much has been taken.  But under our position, and, of course, I do think it's a right that no longer exists, I think that this Court, and you asked me early on what this Court can do, I think that since the United States did not keep their constitutional rights, they did not provide access, my clients sent them letters, asked to be part of it, they ignored them. They went on and negotiated, and then Congress passed the Settlement Act, and now it's gone into, you know, it's been a year ago, it was published in the Federal Register, so there is final agency action. At this time, my client's constitutional rights have been violated, there's due process, there's statutory rights, and they have Indian trust rights. And I think all of those are reasons why you can send it back to the District Court and why the Settlement Act could be void ab initio because of the violation of my client's rights. And that's what we would like to do is go back to the District Court. So you would like us to hold that the Settlement Act is unconstitutional? I think that right now, I think there are many issues that we're talking about that are not even... I know, but I heard you say that it was void ab initio, that would be unconstitutional, right? Right, I would, that's what I... As a violation of due process rights? Yes, and I would... Because it gives control of the water to the Crow tribe that should have belonged to your client. Okay, what if the Act had said, we're going to take land in Montana that affects some of your client's land interests. We're going to take the land plus everything that goes with it, including the water, to create a new air base. Would that be a violation of the due process clause? If they ignored and didn't allow the person to be present and have their due process, I mean, that's what due process is supposed to... But you get to go to Congress, you can write letters to your members of Congress, you can write it to the Senators, you can write it to Senators of other states, you can write to the President, you can appear at hearings, you can submit stuff, all of that is part of the process, but that's a legislative process, not an individual adjudicatory process. And we have an additional issue here, is not only do we have citizens of the United States, we have individual latis who the United States owns a trust duty to. Okay, now you didn't bring an FTCA claim? Correct, but I could. I mean, right now I've been bumped out of district court on a 12C, and I'm asking you to send it back so I can bring this up. Now, we have many things that have changed since I was bounced out of court. I mean, on a 12C motion, everything is supposed to be interpreted in my favor. Furthermore, I have Indian latis, so the treaties are supposed to be interpreted in their favor. You have no facts, you have no legal conclusions. So forgive me for interrupting, but your time is ticking. So now I think you're arguing that the only thing really before us is the district court's ruling at 12C, that she didn't have final, there was no final agency action, so there's no jurisdiction. Are you now arguing that that's all you want us to reach? That's actually what I did argue in my briefs, in the reply briefs. I responded to all the other arguments because the United States brought up many factual issues that had not been determined by the district court. The relief you're seeking, we started by asking you the relief you're seeking, and now I hear a different answer. Is that the relief you're seeking, just to send it back because there's been final agency action? Yes, that's what I finished with in my reply brief. I think that's all that's properly before the court, and we get hung up on all these. What would you argue to the district court if we did that? What's that? What would you then argue to the district court? I would then argue that the United States violated their trust duties, their constitutional duties to my clients, and that the act was void ab initio because of the violation of the Constitution. I mean, in this case, there's got to be a remedy because of the wrong, and I think I have a right to develop that at the district court. We keep suggesting a remedy, and you keep telling us you don't want it. Well, I want the remedy of the water to stay with the land because without that water— I understand, but the remedy provided by the Fifth Amendment is just compensation. Right, and I have, I think it's six or eight years after the time that they published in the Federal Register to pursue that, and ideally my clients are going to be better off if they have that water to pass on to their children and with their land. Okay. We've taken you way over your time. I will allow you time for rebuttal. Thank you very much. May it please the Court, I'm Mary Gabrielle Sprague for the Federal Defendants. We believe that once the Settlement Act was enacted by Congress in 2010 that the focus had to be on the Settlement Act itself. We believe that the Settlement Act was a lawful exercise of Congress's authority with respect to the water rights involved, that the Settlement Act actually has provided great benefits to the Crow tribe and the Allottees. Over $460 million was appropriated to improve the irrigation and other water systems within the reservation, and in their complaint the Allottees did not ask to invalidate the statute, perhaps because of the benefits that are provided. But in any event, Congress believed that in substituting the rights of the Settlement Act for winter's rights, that it was providing equivalent or better water rights to the Allottees. If Congress was wrong, then I believe your Honors are correct that the process is for individual Allottees to go through the process that Congress directed in the Settlement Act, which is to request initially from the Crow tribe through the Tribal Water Code. To the extent the request is to unwind the Settlement Act, it strikes me as a non-justiciable request. But I don't think that's the argument you made in your brief. Could you just, whether you did or not, what's your position on that please? They can challenge the constitutionality of this. I'm talking about the constitutionality before we even get there. If the, what I just heard is I want the water to stay with the land, my clients and children will be better off. In other words, the judgment call. It goes back to Judge Bybee's point about being at the table, being part of them, and really just disagreeing with the decision. And that strikes me as quintessentially non-justifiable. That part of it is, Your Honor. Okay. That's correct. All right. And to the extent there's a due process argument, if we get past that, and the real concern is that there has been a taking, is your position rightness? Is that your defense? Yes, it is, Your Honor. That we believe that virtually all, if not all, allottees will be in the same situation or a better situation that they would have been without the Settlement Act. But that can only be determined on a case-by-case basis as an allottee goes through the process and seeks a quantification of their individual right. The initial decision is through their sovereign tribe. They're all members of the Crow tribe. There are rights of appeal to the Department of the Interior. Okay. Can I ask you a different question? Forgive me for interrupting, but here's my third question, because you answered the first two. I only have three. What if an allottee says, I had an individual right, as we've just sort of I think unraveled in this discussion here in the courtroom, I had an individual right before the compact that I could have defended myself if I thought my allotment was inadequate. And now that's been taken away and given to the tribe. I now have a piece of a, you know, still unquantified piece of an aggregate property right, but it's vested now in the tribe. And I don't trust the tribe to adequately defend that right. Let's just hypothetically say if that's the case, is there a claim there? That the process has been changed to their advantage. The process has been changed so now they wouldn't have standing. Now somebody else, meaning the tribe, is going to be in a position of defending those rights. I think there's not a claim, but because of the way the law really works, I think the allottees are overstating the process they currently have, which is it's not typical for an allottee to have a quantification of a specific right. The winter's right in our view is the derivative. Forgive me. But before you go on, you just said currently have. Do you mean pre-settlement act? Apart from a settlement act. Okay, so that's not current. So that's where you're lying. Excuse me. Okay. As a general matter of law, apart from any settlement act, and this is one of many, that an allottee on a reservation does not typically have a piece of paper that says, I have the right to so much water. Sure. The winter's right is derivative from the tribal right, and the just and equal allocation is the same under the settlement act as it is beforehand. But there's a new mechanism now. Correct. And what if the allottee, that's what I understand. You know, when I read the compact, it reads like a recitation of the winter's rights. And so, as I said earlier, but there's a clearly, I think, a clear statement today in court that the problem is that there was a right that could have been defended on an individual basis pre-compact, and now that right is vested with the tribe. Is there a, even before the machinery is kicked into gear, so there could be a claim arising from the outcome, that is the quantification of the allotment, is there a claim arising from the shift from an individual right to the aggregate right in the tribe? I don't believe there's a meritorious claim because Congress has the right to substitute the mechanism. It would make a non-justiciable question. That's a judgment call made by Congress about how that's going to work. Okay. Thank you. Let me ask you one thing. Before compact and the settlement act, if I were an individual allottee and I wanted to sell a black acre, 100 acres, and it's water rights, would I have any idea about how much water I was selling, or would I just be saying together with all rights and accoutrements thereto? Your Honor, my understanding is that it's the latter, that the allottees would not typically have any quantification. Now, whether they could have gotten one from Interior before they sold, I don't think that's typically what happened, that the sale would occur, and then when the non-Indian wished a quantification, then the non-Indian could obtain a quantification through the state process. If there were a misuse of water upstream and the allottee's water dried up or substantially diminished prior to the settlement, what rights would the allottee have in that situation regarding the water? How would it be resolved? I mean, typically, apart from the settlement act, the United States would bring an action and has brought an action against the persons who are depriving the tribe or the allottees of their rights. From your perspective, the allottees never represented themselves in these water issues. The government was always the trustee acting on behalf of the allottees and their water rights, even prior to the settlement act. Is that what I'm hearing you say? That's my understanding, Your Honor. Well, this is really not much of a change in that. You maybe have a different body involved, but you have a trust relationship where someone is invested withstanding to litigate on behalf of individual winters allottees with respect to water rights. Correct, Your Honor. Before and after. Correct. For this particular class. I read the class the way Judge Smith does, which is for this particular class, these are all beneficial owners. This is all trust land, right? Correct. Okay. So your position is this is a failed premise if the idea is that I had an individually, my hypothetical, had an individually protectable right, that that's a failed premise. Correct. If one of today's allottees, one of the plaintiffs, were to sell her piece of property to a nonmember of the tribe, would they still have to go through the tribal water code to determine what allotment of water they have? I don't believe they need to do that in advance. I don't believe they do need to. In advance of the sale. In advance of the sale. Right. But are they then subject to the same process as a tribal member would be? I complete the sale of the land. Right. An allottee sells the land to me, and are my water rights still subject to the process from the tribal water code? No. Once it goes to a non-Indian, that the non-Indian does not go through the tribal process. The non-Indian would need to establish the water rights under the state process. And the precise mechanism by which that happens is actually the subject of litigation in Montana at the moment. Whatever water rights I as a non-Indian would acquire would now be determined by the Montana Water Court rather than by the tribal water code. At present, there's a bit of a difficulty because the Montana Water Court had a claims filing date. How the non-Indian water rights would be established after that claims filing date, there is a bit of an administrative problem at the moment that is the subject of a case before the Montana Court. But it's our position that's a state issue that needs to be sorted out, and no doubt will be in some fashion. Let me take that. I want to pursue a different line now. The district court dismisses this because there was no final agency action. There surely has been final agency action in the interim. Is that correct? I believe that there is, but there's no claim which requires that. So the final agency action decision I think really is not, the district court's focus on that is not that helpful. If we were to disagree with the district court or to say that events have now mooted the district court's decision, should we send this back to the district court or do we decide this on a different basis? No, Your Honor. I don't think there's any purpose in sending it back because I really think there's nothing for the district court to do because there were alternative grounds actually argued in the district court, which it simply chose not to incorporate into its decision. But that's why in our response brief I tried to break down the claims to solve this problem or to address the problem that the premise has shifted, and that is most of the complaint is directed to actions or inactions of federal officials in the negotiation of the Compact and the Settlement Act. So there's nothing for the district court to decide on that? Correct. There's no claim as to that. Once the Settlement Act was enacted, whether the interior officials were sufficiently protective or not really is not a legal issue. The second claim was they wanted appointment of the federal government to fund counsel for them both in connection. But by the time they filed in 2014, the Compact and the Settlement Act were done. The Montana Water Court proceeding was ongoing, but that's finished now, so that's done. So that the only potential claim is this claim we've been talking about of a taking of their property. That is a justiciable claim, but they adamantly have not asserted that claim, which in any event a claim for compensation is not within the jurisdiction of the district court. So there's nothing that the district court can do on remand. Can I ask you, following up on Judge Bybee's question, given the conflicting rulings in Presbyterian Church USA v. U.S. and Gallo Cattle v. U.S. Department of Agriculture, are we to treat a Section 702 waiver as being limited to a final agency action? I see you're smiling. Your Honor, I have never been able to figure that out. I'm sorry. It occurred to me that I might, should look at that again and try to sort it out. Really the only way we could make your day more complicated, I think. But I tried once and failed, and I didn't try again in preparation for this argument. So your answer is, don't know. I don't know, Your Honor. I'm sorry. Sometimes I don't know is the correct answer. We don't either. Let me ask you one other question here. The plaintiffs in this case, of course, have asked for counsel. I was going to ask them what authority they had for that. But Section 25 U.S.C., Section 175 indicates that the U.S. attorney is to represent the LITs in this. Other than that, they've declaimed that. They don't want that. Other than that, are you aware of any authority that would permit the LITs to have paid government counsel in connection with the proceedings that have now all concluded? No, Your Honor, I'm not. And, in fact, we note in our brief that there are specific statutes that Congress has directed the payment for funding a private independent counsel. So it obviously can do that when it wishes, but that is done by a specific statute. For example, the Hopi-Navajo land dispute is one of those. Right. Anything further, counsel? That's all I have. Thank you very much. Ms. Lund, we'll allow you time. Well, to be quick, I kind of have to correct the record, and I'm sure that that's to our greatest understanding of how adjudication happens in Montana, but that happens to be where half of my practice is. So I'd like to set the record straight about what actually is happening. Pre-compact, and at all times, Montana has jurisdiction over all the water rights, and the federal government has waived their sovereign immunity for the purpose of adjudication. So Montana gets to do it. Let me be sure I understand. Okay. Pre-compact, an allottee who had a dispute regarding water would not be represented by the federal government in a trust relationship but would individually go to court, Montana State Court, to vindicate his or her property rights. Is that what you're saying? Correct. Many of my clients filed in the Montana adjudication system on their water rights. And so right now, that filing for their water rights is called pro se. Until it's adjudicated to the water court, it is on its face an example of their water right. And so those water rights sit there. I want to be sure I'm understanding the time framework here. Are you talking about the new water court, or are you talking about something that's existed for a long, long time? We didn't set up our water court until the 70s. And so we're late in adjudication. So you're not speaking of under the water code, the new water code. You're talking about but pre-compact in the Montana water court, an individual would appear? Yes, the allottee would appear. Now, as we're going through adjudication, there are some times where the United States, the tribes have their own attorneys and the United States also appears on their behalf. So they have two counsel through the adjudication process. They would all appear in these proceedings, right? Correct. So no individual allottee would just simply go to court and sue and would be there by him or herself alone, right? Well, right now we have these allottees. I'm not talking about now. I'm talking about pre-compact. Okay. Then you have to understand, we're just now getting to the process where we're having these court proceedings. So we did not have a lot of these court proceedings for adjudication prior to the compact. What I'm trying to understand, counsel, is this. If I understood it correctly, that the allottees both before and after the settlement agreement, when they would appear in litigation regarding their water rights, the government always had a role. It was a trust relationship. It always had a role, and in effect, that role maybe slightly changed, but it just continues under the Settlement Act. Do you dispute that? I dispute that. Why? That has simply not happened. The United States did not file with the allottees on their water rights, so some of my clients actually have claims sitting in the Montana State Adjudication for their property rights that are sitting there in their own name. Have you ever seen one fully litigated prior to the compact where an allottee went to court regarding water rights and received a judgment and went forward on that without any involvement of the United States government? In this very case, my clients filed objections to this compact. They represented themselves. They hired me after they filed their objections, and the United States did not show up on their behalf and factually opposed their position. Again, we're like trains on the night. I'm talking about an individual water claim, not what's happening with the compact. Let's say 1950. 1950, Mr. X, a member of the tribe, a winter allottee, says my water is being reduced. Somebody is taking it upstream. I'm suing X down the road. I want these claims adjudicated. Did that happen in 1950 without the government being involved in the litigation? Well, again, the time frame is wrong because we haven't finished adjudication, so until we get adjudication done, we can't do that in Montana. We're decades behind California. Forgive me, counsel. I'm talking about in 1950, hypothetical 1950. If somebody filed that, could they have done it as individual allottees without the government being involved, or was the government always a trustee in that relationship? To my knowledge, the government has never been with the allottees filing on their property rights in state court. They have filed on them individually. Claire, you're using language that's just a little bit imprecise. Forgive me for interrupting. When you say the government has never been with them. The allottees filed in state court on their own behalf. The federal government did not assist them, did not join them, did not participate. Judge Smith is asking a different question, and this is an important question about whether this is trust land and there's a trust relationship. Right. So I'm not talking about the logistics of whether the government showed up to defend, but I'm trying to figure out, I understood that this class of plaintiffs are all folks whose land is held in trust. Is that right? Yes. The United States government has not filed on their claims in state water court. They have filed individually on their own water rights, just like the non-Indians who stepped into the shoes and got their water rights from them, and that is part of the ongoing process in the state of Montana. The federal government shows up with the tribes, not with the allottees, and they file with the tribes. Even pre-compact. Even pre-compact. Thank you. Counsel, I'd like to follow up on a question that I asked to the government's counsel. Yes. Judge Waters here just dismissed this case for lack of final agency action, which I think we all agree has since occurred since Judge Waters issued her decision. So if we were now to decide that there is final agency action here, then you want to send this back to Judge Waters? Yes, Your Honor. To decide the constitutionality of the Settlement Act? Is that what would be before Judge Waters? If we send this back to Judge Waters, Judge Waters is going to say, what's still alive in this case? And the answer to that question is? The constitutionality of the Settlement Act and also whether or not my client's due process has been violated based on the fact that they have a real property interest in their winter's doctrine. Those seem to be sort of the same thing. So the constitutionality of the Act, your claim on that is based on the due process clause. Yes, Your Honor. Is it based on anything else in the Constitution? No, Your Honor. Okay. So just on the due process clause, and your due process argument is, one, that you've been deprived of property, and two, that the process was infirmed because you weren't represented by private counsel? And because we asked to be at the table and to be able to protect our rights, and we were not afforded that. You're supposed to be given notice, and in my brief I talked about the special things that have to happen if somebody takes away one of your due process rights. Okay. And do you have any case, so aside from the deprivation of property, do you have any case in which a court has said that a private party is entitled to private counsel and otherwise it's a violation of the due process clause? No, Your Honor, but I don't have any other cases where the United States had a duty to help the elatees. So the answer is no. Yes. I understand why the answer is no, because I thought this was probably a novel argument. Yes. Okay, the next one, on the question of notice. Now that may be disputed because I understand that some notices have been sent out. Do you have anything that suggests that an act of Congress can be declared void because people who are affected by the act of Congress were not supplied sufficient notice? No, Your Honor, but I did brief that Congress has special duties when it comes to Indian tribes. So this would also be a novel question that you would like us or the district court to decide, is that we can void an act of Congress if Congress doesn't provide sufficient notice to Indians for which the United States has a special obligation. And it's not just specific notice. It's the process that they're able to be at the table to protect their property rights. To participate. Yes. And you asked me earlier about I didn't bring an FTC claim. Remember when I brought this case, everything was still moving. I was trying to get injunctive relief. I can't, you know, if I have the ability to go back to the district court, I can ask for the ability now to amend my complaint to reflect the current facts. So I very well do have an FTC claim now because of the events that have happened since then. And I understand. No, under the FTCA, you usually have to go to the agency first. And you have a two-year statute of limitations. Right, and it didn't go active until June 22nd. I'm sorry? The Act became final on June 22nd of last year when it was published in the Federal Register. That changed the whole playing field of where we're at. Okay. All right, Counselor, I think they'll be understandable. Thank you very much. Thank you both. Thank you very much. We thank both Counsel for the argument. The crowelotes case is submitted.
judges: Bybee, M. Smith, Christen